IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | | |
|---|---|---|
| In re: | § | 09-10332/Chapter 11 |
| THE HAMMOCKS, LLC d/b/a, | § | |
| Richmond Hill Inn, | § | |
| Debtor, | § | Adversary Proceeding |
| | § | № 09-1035 |
| | § | |
| THE HAMMOCKS, LLC d/b/a Richmond | § | |
| Hill Inn, Debtor-in-Possession, | § | MEMORANDUM IN |
| Plaintiff, | § | OPPOSITION TO MOTION |
| v. | § | TO WITHDRAW REFERENCE |
| | § | |
| HARLEYSVILLE MUTUAL INSURANCE | § | |
| COMPANY, | § | |
| Defendant. | § | |
| | § | |

Pursuant to Local Rule 7.1, the Debtor-in-Possession and Plaintiff, The Hammocks, LLC d/b/a Richmond Hill Inn, files this Memorandum in opposition to the Defendant's motion to withdraw reference of this adversary proceeding to the U.S. Bankruptcy Court for the Western District of North Carolina, showing unto the Court the following:

FACTS

The Hammocks, LLC d/b/a Richmond Hill Inn ["the Hammocks"] has owned certain Buncombe County real property commonly known as the Richmond Hill Inn ["the Inn Property"] since October 2005. (Complaint #6.) Beginning in October 2005, the Hammocks maintained and used the Inn Property, including a center-piece 1889 Victorian mansion ["the Mansion"] and other buildings

thereon, in the operation of an inn business, providing fine lodging and dining for guests. (Complaint #7.)

In October 2008, Defendant, Harleysville Mutual Insurance Company ["Harleysville"], issued the Hammocks a commercial insurance policy ["the Insurance Policy"] providing fire insurance for the Mansion, the buildings, and personal property on the Inn Property and insuring the Hammocks against lost income and extra expenses resulting from a fire loss. (Complaint #8-#11.)

In the early morning hours of March 19, 2009, fire destroyed most of the Mansion and damaged or destroyed personal property in and around the Mansion. (Complaint #12.) The Hammocks promptly notified Harleysville Insurance of the fire and the resulting losses to the Mansion and the personal property in and around the Mansion. (Complaint #13.)

On or about March 25, 2009, the Hammocks filed a Voluntary Petition initiating a Chapter 11 bankruptcy proceeding. (Complaint #14.)

Thereafter, by letter dated April 2, 2009, Harleysville Insurance demanded that the Hammocks provide it certain records and documents; demanded that a party authorized to testify on behalf of the Hammocks, LLC submit to an Examination under Oath on or around June 10, 2009; and requested that the Hammocks provide it a sworn proof of loss within sixty (60) days.

2

(Complaint #15.)  This  postpetition  demand  letter  requested, among  other  documents,  "[a]ny  and  all  documents,  correspondence or  other  writing  relating  to  or  support  the  filings  under Chapter 11 by the Hammocks, LLC" [sic] and was copied on David Gray, the Hammocks' Chapter 11 attorney of record.  (Motion for Relief from Stay, Exhibit 1, Exhibit F Part 1.)

On  May  11,  2009,  the  Bankruptcy  Court  entered  an  Order authorizing  the  Hammocks,  as  Debtor-in-Possession,  to  engage Long,  Parker,  Warren,  Anderson  &  Payne,  P.A.  ["DIP's  Special Counsel"]  as  special  counsel  to  represent  it  in  its  fire  loss claim  against  Harleysville  Insurance.  (Order  entered  May  11, 2009.)  On  May  13,  2009,  Harleysville  Insurance  sent  a  letter directly  to  the  DIP's  Special  Counsel  to  supplement  its  request for  documents.  (Motion  for  Relief  from  Stay,  Exhibit  1,  Exhibit F Part 1.)

Beginning  in  May  2009,  the  Hammocks,  by  and  through  the DIP's  Special  Counsel,  responded  to  Harleysville  Insurance's document  requests  by  providing  all  relevant  records  and documents,  totaling  more  than  10,400  pages  of  documents. (Complaint #16.)  On or about May 29, 2009, the Hammocks, by and through  the  DIP's  Special  Counsel,  submitted  to  Harleysville Insurance a Sworn Statement in Proof of Loss, claiming insurance proceeds  of  approximately  $6  million.  (Complaint  #17.)  The Proof  of  Loss  expressly  provided  that  any  loss  recovery  was

3

"payable to The Hammocks LLC d/b/a Richmond Hill Inn debtor in possession 09-10332."

On June 10 and 11, 2009, Dr. William Gray, the Manager and a minority-interest Member of the Hammocks, submitted himself for examination under oath by attorneys representing Harleysville Insurance.  (Complaint #19.)   The DIP's Special Counsel attended the examination, which took place in its law office.

On October 5, 2009, Harleysville Insurance filed a Motion for Relief from Stay, which included a proposed Complaint seeking the rescission of the Insurance Policy on grounds including purported postpetition fraud allegedly attributable to the Debtor-in-Possession.   (Motion for Relief from Stay, Exhibit 1.)

By the attached letter dated October 5, 2009, Harleysville Insurance advised the DIP's Special Counsel of its "decision to seek rescission" of the Insurance Policy.   Under cover of such letter, Harleysville Insurance provided the DIP's Special Counsel a copy of its Motion for Relief from Stay and tendered a $23,933.63 check representing the refund of premiums directly to the DIP's Special Counsel.

By the attached letter addressed to the DIP's Special Counsel and dated January 4, 2010, Harleysville Insurance finally expressly denied the Hammocks' postpetition fire

4

insurance claim, purportedly on grounds including fraudulent misrepresentations made by the Hammocks postpetition.

On December 2, 2009, the Hammocks, as Debtor-in-Possession, filed a Complaint initiating this adversary proceeding against Harleysville Insurance, alleging a postpetition breach of contract and postpetition bad faith and unfair trade acts in connection with the investigation and repudiation of the Debtor-in-Possession's insurance claim.

## SUMMARY OF ARGUMENT

Harleysville Insurance seeks immediate discretionary withdrawal of reference of this adversary proceeding, in whole, based upon its forecasted demand for a jury trial, judicial economy, and its contention that this adversary proceeding is a non-core proceeding. While a demand for a jury trial may provide "cause" for discretionary withdrawal, 28 USC § 157(d) allows withdrawal of reference in part (e.g., for the purpose of conducting the jury trial itself), and the Courts in the Fourth Circuit have regularly responded to jury demands with withdrawals solely for the purpose of conducting jury trials, with reference continuing for all pre-trial matters. This adversary proceeding is in fact a core proceeding, in that the Debtor-in-Possession alleges postpetition breach of a prepetition insurance contract, following Harleysville Insurance's substantial affirmative interaction with the Debtor-

5

in-Possession in the proof of loss and claims process, and
Harleysville Insurance's defense and imminent counterclaim
seeking to attribute purported postpetition fraud to the Debtor-
in-Possession. Given the core nature of this proceeding and the
judicial economy realized by referring pre-trial matters to the
Bankruptcy Judge rather than the Magistrate Judge, the Court
should withdraw reference only in part, solely for the purposes
of jury trial.

ARGUMENT

I. HARLEYSVILLE INSURANCE BEARS THE BURDEN OF DEMONSTRATING
"CAUSE" SUPPORTING ITS MOTION FOR DISCRETIONARY WITHDRAWAL OF
REFERENCE, BASED UPON FACTORS INCLUDING JUDICIAL ECONOMY AND THE
CORE/NON-CORE NATURE OF THE ADVERSARY PROCEEDING.

28 USC § 157(a) authorizes each district court to refer
"any or all cases under title 11 and any or all proceedings
arising under title 11 or arising in or related to a case under
title 11" to the bankruptcy judges of that district. The U.S.
District Court for the Western District of North Carolina has in
fact referred to its Bankruptcy Judges all bankruptcy cases, all
core proceedings arising under title 11 or arising in a case
under title 11, and all non-core proceedings related to a case
under title 11. See In re 222 South Caldwell Street, Ltd.
Partnership, 409 BR 770, 782 (Bkrtcy.W.D.N.C. 2009) (referencing
Administrative Order Assigning and Allocating All Bankruptcy
Matters for Administration and Otherwise Handling and

6

Supervision to Judge Hodges, Judge Whitley and Judge Wooten dated May 31, 1995 ["the Administrative Referral Order"]).

This adversary proceeding states claims for postpetition breach of contract and postpetition wrongful conduct in connection with Harleysville Insurance's de facto denial of the proof of loss and insurance claim submitted by the Debtor-in-Possession in administration of its bankruptcy case. Pursuant to 28 USC § 157(a) and the Administrative Referral Order, this adversary proceeding has been referred to the Bankruptcy Court.

By motion filed December 28, 2009, Harleysville Insurance seeks the District Court's discretionary withdrawal of the reference in this action "for cause shown," pursuant to 28 USC § 157(d). In determining whether there is "cause shown" for discretionary withdrawal of reference, District Courts in the Fourth Circuit have enumerated factors including the following:

> (i) whether the proceeding is core or non-core, (ii) the uniform administration of bankruptcy proceedings, (iii) expediting the bankruptcy process and promoting judicial economy, (iv) the efficient use of debtors' and creditors' resources, (v) the reduction of forum shopping, and (vi) the preservation of the right to a jury trial.

In re Peanut Corporation of America, 407 BR 862, 865 (W.D.VA. 2009). See also In re Millenium Studios, Inc., 286 BR 300, 303 (D.MD. 2002) (substantially similar but not identical list of factors).

7

Harleysville Insurance bears the burden of showing cause for discretionary withdrawal of reference. In re Peanut Corporation of America, 407 BR at 864; In re Millenium Studios, Inc., 286 BR at 303. In this matter, Harleysville Insurance bases its "cause" arguments on its intent to demand a jury trial, judicial economy, and its contention that the adversary proceeding is a non-core, related proceeding.

However, judicial economy and the core nature of this adversary proceeding in fact militate in favor of withdrawal of this action solely for the purpose of conducting the jury trial, at the time of the final pre-trial conference, with referral of this action continuing for all other pre-trial proceedings.

II. THIS ADVERSARY PROCEEDING INVOLVES A DEBTOR-IN-POSSESSION'S CLAIM FOR POSTPETITION BREACH OF A PREPETITION INSURANCE CONTRACT, ITS CLAIM FOR BAD FAITH AND UNFAIR TRADE ACTS IN CONNECTION WITH THE DE FACTO DENIAL OF A POSTPETITION INSURANCE CLAIM, AND THE INSURANCE COMPANY'S DEFENSE AND IMMINENT COUNTERCLAIM ASSERTING FRAUD ALLEGEDLY ATTRIBUTABLE TO THE DEBTOR-IN-POSSESSION.

The Complaint in this action alleges a postpetition breach of a prepetition fire insurance contract. In particular, N.C.G.S. § 58-44-15 and the Insurance Policy provide that no fire insurance proceeds are due *unless* a proof of loss is submitted and, even then, no insurance proceeds are due or payable *until* at least thirty (30) days after the submission of such proof of loss. N.C.G.S. § 58-44-15 (Standard Fire Insurance Policy form, lines 97-99 (proof of loss requirement),

8

lines 150-156 (no loss payable until 60 days after proof of loss *and* ascertainment of loss), and lines 157-160 (no suit on policy unless compliance with proof of loss requirement); Motion for Relief from Stay, Exhibit A - Commercial Output Policy #OF 3M2977, CO-1000(Ed. 10-02), Page 25 of 31 (proof of loss required) and Page 29 of 31 (no loss payable until 30 days after proof of loss *and* amount of loss established); Strong's NC Index 4th, Insurance § 783 (no suit on fire insurance claim unless all proof of loss requirements met).

In this instance, the foreclosure-driven bankruptcy filing followed the fire loss by less than one week, and no proof of loss had been submitted at that point.  As a result, the Hammocks had no right or claim to any fire insurance proceeds at the time of the bankruptcy filing.  The Hammocks, as Debtor-in-Possession, did in fact submit to Harleysville Insurance a Sworn Statement in Proof of Loss postpetition, by May 29, 2009. However, under N.C.G.S. § 58-44-15 and the Insurance Policy, no proceeds would be payable under the Insurance Policy until at least 30 days thereafter, or June 28, 2009.  Accordingly, no breach of contract occurred, and the Hammocks had no right or claim to payment of any insurance proceeds, until June 28, 2009, more than three months after the bankruptcy filing.

Moreover, the Hammocks' Complaint states claims for bad faith refusal and unfair trade acts, based upon the wrongful,

9

postpetition   conduct   aggravating   Harleysville   Insurance's
postpetition breach of the Insurance Policy.  In particular, the
grounds for the bad faith and unfair trade act claims included,
but  were  not  limited  to,  Harleysville  Insurance's  declared
intent and affirmative efforts to deny any insurance proceeds to
the  Debtor-in-Possession  in  this  bankruptcy,  based  upon  the
alleged postpetition fraud of the Hammocks' Manager, even though
such alleged postpetition fraud is not legally attributable to
the  Debtor-in-Possession  or  the  Bankruptcy  Estate. (Complaint
#34(i); Motion for Relief from Stay, Exhibit 1.)

Finally, in its Motion for Relief from Stay, Harleysville
Insurance has forecast its intent to bring counterclaims seeking
rescission of the Insurance Policy based, among other things,
upon assertions of fraud allegedly attributable to the Debtor-
in-Possession.

III. WHILE A DEMAND FOR JURY TRIAL MAY CONSTITUTE CAUSE FOR
DISCRETIONARY WITHDRAWAL, COURTS IN THE FOURTH CIRCUIT HAVE
REGULARLY ALLOWED WITHDRAWAL OF REFERENCE IN PART, SOLELY FOR
THE PURPOSE OF CONDUCTING THE JURY TRIAL ITSELF.

28 USC § 157(e) permits the Bankruptcy Court to conduct
jury trials where the District Court designates it to do so and
where all parties consent.  This District Court has previously
recognized that courts outside the Fourth Circuit "have noted
that … refusal of all the parties to consent to a jury trial in
bankruptcy court may constitute cause for withdrawal."   <u>In re</u>

10

Fink, 294 BR 657, 659 (WDNC 2003) (remarking that "Fourth Circuit law on the matter appears to be nonexistent").

In its Memorandum, Harleysville Insurance asserts that it will not consent to a jury trial in the Bankruptcy Court, that "the case simply cannot proceed to conclusion in any court" absent withdrawal, and that the District Court should therefore withdraw reference "so that this matter may properly proceed before the District Court." (Harleysville Insurance Memorandum p. 10.) Harleysville Insurance appears to contend that its imminent jury demand requires immediate withdrawal of all proceedings in this action, well in advance of any trial, without any lucid explanation why, but apparently due to the concern footnoted elsewhere in its Memorandum that filing counterclaims may waive its right to trial by jury. (Harleysville Insurance Memorandum pp. 5 & 10.)

However, 28 USC § 157(d) allows the District Court, in its discretion, to "withdraw, *in whole or in part*, any case or proceeding" referred to the Bankruptcy Judges (emphasis added). As a matter of fact, the Courts in the Fourth Circuit have regularly granted motions to withdraw reference in part, specifically for the purpose of conducting the jury trials, with the referral continuing for discovery, motion, and other pre-trial purposes. See, e.g., In re Florida Hotel Properties Ltd. Partnership, 163 BR 757 (W.D.N.C. 1994) (granting motion to

11

withdraw automatic reference by withdrawing "for the purpose of conducting a jury trial only" and otherwise referring the matter to the bankruptcy court "to conduct all pretrial proceedings including [Defendant's] pending motions to dismiss, strike and order separate pleadings"); Hutson v. WMR Capital Corp., 2007 WL 1434863 (M.D.N.C.) (granting motion to withdraw reference "solely for the purpose of conducting a jury trial") (unpublished; attached).[1]    See also In re Furniture Rentors of America, Inc., 162 BR 728 (D.MD. 1994) (denying motion to withdraw reference at early stage in proceeding, without prejudice to renewal of motion at later stage, but not before the pre-trial conference).

In fact, in an opinion cited in Harleysville Insurance's Memorandum, the Fourth Circuit Court of Appeals provided as follows:

> Contrary to United Capitol's contention, however, a valid jury demand does not strip a bankruptcy court of its jurisdiction to supervise discovery, conduct pre-trial conferences, and rule on pending motions.  Thus,

---

[1]  In its Memorandum, Harlesyville Insurance noted that the Bankruptcy Court in In re Bonds Dist. Co., 2000 WL 33682815 (Bkrtcy.M.D.N.C. 2000) (unpublished; attached), ruled that the plaintiff was entitled to a jury trial on its unfair trade act claim and "recommend[ed] that the reference be withdrawn without any further proceedings in th[e] [bankruptcy] court." (Harleysville Insurance Memorandum p. 9.)  However, the Memorandum failed to note that the Bankruptcy Court had already heard and decided a motion to strike and motions for summary judgment, as well as apparently supervising all other pre-trial matters.

until a proceeding is ready for trial, a bankruptcy court may continue to oversee pre-trial matters.

In re Nichols & Associates Tryon Properties, Inc., 1994 WL 502026, *4 (4th Cir. 1994) (citations omitted) (unpublished; attached).

If the Court enters an order at this time, before any further pleadings, withdrawing reference in part, specifically solely for the purpose of the final pre-trial conference and any jury trial, then Harleysville Insurance's concern about the effect of filing a counterclaim becomes moot.

IV. THE DEBTOR-IN-POSSESSION'S CLAIMS FOR POSTPETITION BREACH OF A PREPETITION INSURACE CONTRACT, FOLLOWING HARLEYSVILE INSURANCE'S SUBSTANTIAL POSTPETITION INTERACTION WITH THE DEBTOR-IN-POSSESSION, AND HARLEYSVILLE INSURANCE'S DEFENSE AND IMMINENT COUNTERLCAIM ATTRIBUTING FRAUD TO THE DEBTOR-IN-POSSESSION ARE CORE PROCEEDINGS.

As noted, in determining motions for discretionary withdrawal of reference, other District Courts in this Circuit have considered whether the subject proceeding is core or non-core. In re Peanut Corporation of America, 407 BR at 865; In re Millenium Studios, Inc., 286 BR at 303. Core proceedings are those matter integral to the bankruptcy case, "arising under title 11, or arising in a case under title 11." 28 USC § 157(b); In re 222 South Caldwell Street, Ltd. Partnership, 409 BR 770, 782 (Bkrtcy.W.D.N.C. 2009). Non-core, related proceedings are those proceedings that are not core but are

13

otherwise related to a title case and within the Bankruptcy Court's jurisdiction. 28 USC § 157(a)-(c).

The distinction between core proceedings and non-core, related proceedings "is far from clear." *In re Apex Express Corporation*, 190 F.3d 624, 631 (4th Circuit 1999); *In re Millenium Studios, Inc.*, 286 BR 300, 304 (D.MD. 2002); *In re Griffin Services, Inc.*, 2005 WL 1287920, *4 (Bkrtcy.M.D.N.C. 2005) (unpublished; attached). However, courts have developed and recognized at least three general rules as to what breach of contract actions constitute core proceedings and which do not:

(1) Prepetition Breach: Courts have consistently held that claims *by* a debtor-in-possession or trustee for *prepetition* breach of contract constitute non-core proceedings. 123 ALR Fed 103, *Action for Breach of Contract as Core Proceeding in Bankruptcy under 28 USCS § 157(b)*, § 2; *Valley Historic Limited Partnership v. Bank of New York*, 486 F.3d 831, 836 (4th Circuit 2007) (bankruptcy court did not have "arising in" core jurisdiction over "breach of contract claim, that *pre-dates the filing of the Chapter 11 case*" (emphasis added)); *In re Apex Express Corporation*, 190 F.3d 624, 631-632 (4th Circuit 1999) (prepetition contract claims and accounts receivable claims must be treated as non-core, "at least when grounded in state law and *arising pre-petition*" (emphasis added)); *In re Porter-Hayden Company*, 304 BR 725, 730 (D.MD. 2004) ("[T]he Fourth Circuit has

14

held that accounts receivable and contract claims against third parties to a bankruptcy proceeding are treated as non-core *when arising pre-petition* and grounded in state law." (Emphasis added.)); In re Millenium Studios, Inc., 286 BR 300, 302-303 and 304 (D.MD. 2002) (holding claims for prepetition breach of contract to be non-core); In re National Enterprises, Inc., 128 BR 956, 960 (E.D.VA. 1991) ("[C]ontractual claims *that arise prior to the petition* and, of course, from contracts entered prior to the petition are non-core matters." (Emphasis added.)).

(2) Claim Against Estate: Courts have consistently held that actions *against* the estate of the debtor for breach of prepetition contracts are core proceedings. 123 ALR Fed 103, *Action for Breach of Contract as Core Proceeding in Bankruptcy under 28 USCS § 157(b)*, § 2; In re WSM Enterprises, Inc., 102 BR 461, 468 (Bkrtcy.D.MD. 1989) (holding claim *against* estate for postpetition breach of prepetition contract constituted a core proceeding).

(3) Postpetition Contract: Most courts have generally held that claims *by* a trustee or debtor-in-possession for breach of postpetition, pre-confirmation contracts are core proceedings. 123 ALR Fed 103, *Action for Breach of Contract as Core Proceeding in Bankruptcy under 28 USCS § 157(b)*, § 2; In re National Enterprises, Inc., 128 BR 956, 960 (E.D.VA. 1991) ("Few courts dispute that post-petition claims arising from contracts

15

entered post-petition are core matters to be adjudicated by the bankruptcy court.").

However, there is conflicting authority whether an action by a trustee or debtor-in-possession for postpetition breach of a prepetition contract constitutes a core proceeding or not. 123 ALR Fed 103, *Action for Breach of Contract as Core Proceeding in Bankruptcy under 28 USCS § 157(b)*, § 2 at 126 ("Courts … have held in some cases that such proceedings are core proceedings … and that they are not core proceedings in other cases….")  "No general principle has yet evolved for these cases…," Id., and "[t]he proper characterization [core or non-core] of a claim arising from a pre-petition contract for a post-petition breach … is not readily apparent." In re National Enterprises, Inc., 128 BR 956, 960 (E.D.VA. 1991).

Courts in the Fourth Circuit have held that a debtor-in-possession's claims for postpetition breach of a prepetition contract are, or at least in certain circumstances may be, core proceedings.  In In re Griffin Services, Inc., 2005 WL 1287920 (Bkrtcy.M.D.N.C. 2005) (unpublished; attached), the Bankruptcy Court held that the Trustee's claims for postpetition breach of a prepetition contract and the related tort claims, arising from the same postpetition facts and transactions, constituted core proceedings.  Id. at *4 ("Numerous courts have found that claims based upon post-petition conduct may be core.").

16

In In re National Enterprises, Inc., 128 BR 956 (E.D.VA. 1991), the District Court noted the apparent absence of any precedent regarding whether an action for postpetition breach of a prepetition contract constituted a core proceeding and acknowledged the split of authority on this issue. After briefly examining the rational for the general principles that had developed with respect to prepetition breaches and postpetition contracts, the District Court opined that a debtor-in-possession's action for postpetition breach of a prepetition contract could be a core proceeding in circumstances in which the debtor-in-possession and the breaching party had had substantial postpetition contacts, as follows:

> Where, as here, it is clear that the contract underlying the claim is a pre-petition contract that contemplated neither dealing with a bankrupt estate nor consenting to the jurisdiction of the bankruptcy court, some affirmative interaction between the non-debtor contracting party and the estate must exist for the matter to be considered a core action, subject to the full panoply of the bankruptcy court's power.

Id. at 961. Accord 123 ALR Fed 103, *Action for Breach of Contract as Core Proceeding in Bankruptcy under 28 USCS § 157(b)*, § 2 at 126 ("However, a number of cases have stated that if it is clear that a prepetition contract did not contemplate dealing with a bankrupt estate or consenting to the jurisdiction of the Bankruptcy Court, there must be affirmative postpetition interaction between the estate of the debtor and the other party

17

for an action for a postpetition breach of the contract to be a core proceeding.").[2]

In this instance, the Debtor-in-Possession's action for postpetition breach of a prepetition insurance contract is a core proceeding.  In re Griffin Services, Inc., 2005 WL 1287920 (Bkrtcy.M.D.N.C. 2005).  Even if the Court favors the more limited rule articulated in In re National Enterprises, Inc., 128 BR 956 (E.D.VA. 1991), the facts in this matter show that postpetition, Harleysville Insurance had substantial affirmative interaction with the Debtor-in-Possession before its de facto denial of the insurance claim and resulting postpetition breach of the insurance contract.  In early April 2009, Harleysville Insurance communicated its demand for a proof of loss, for the production of documents, and for an examination under oath directly to the Debtor-in-Possession's counsel of record.  In May 2009, Harleysville Insurance communicated its supplemental demand for documents directly to the DIP's Special Counsel.  In response to such demands, the DIP's Special Counsel submitted a

---

[2] In In re Nichols & Associates Tryon Properties, Inc., 1994 WL 502026 (4th Cir. 1994) (unpublished; attached), the Fourth Circuit Court of Appeals deemed a postpetition claim on a prepetition contract to be a "non-core proceeding."  However, the Court's focus was on establishing the Bankruptcy Court's jurisdiction, which was at issue, and the facts allowed affirmation of that jurisdiction without the parties earnestly litigating whether a claim for postpetition breach of contract presented a core proceeding.  Moreover, the Court did not address or even note that the facts presented an issue regarding postpetition breach of a prepetition contract.

18

Sworn Statement in Proof of Loss and thousands of pages of documents to Harleysville Insurance, and Harleysville Insurance conducted the examination under oath at the law office of the DIP's Special Counsel, with DIP's Special Counsel present. When Harleysville Insurance decided to seek rescission of the Insurance Policy, it tendered the refund of insurance premiums by sending a check in the amount of $23,933.63 directly to the DIP's Special Counsel.

Moreover, Harleysville Insurance's Motion for Relief from Stay sets out its intent to base its defense and a claim for rescission of the Insurance Policy, in part, upon purported postpetition fraud allegedly attributable to the Debtor-in-Possession. (Motion for Relief from Stay, Exhibit 1.) Clearly, Harleysville Insurance can make no good faith argument that a defense and counterclaim for rescission based upon postpetition fraud allegedly attributable to the Debtor-in-Possession does not present a core proceeding "arising in" the Debtor-in-Possession's administration of a title 11 case.

Nevertheless, even if this adversary proceeding is determined to be a non-core proceeding, the District Court still has the option of making a withdrawal of reference in part, for the sole purposes of conducting the jury trial. See, e.g., In re Florida Hotel Properties Ltd. Partnership, 163 BR 757

19

(W.D.N.C. 1994) (withdrawal of reference in part, only for the purpose of conducting the jury trial, in non-core matter).

V.    JUDICIAL ECONOMY AND THE EFFICIENT USE OF THE DEBTOR'S LIMITED RESOURCES FAVOR WITHDRAWAL OF REFERENCE ONLY IN PART, SOLELY FOR THE PURPOSE OF CONDUCTING ANY JURY TRIAL.

The other factors guiding the Courts discretion in determining whether to withdraw reference favor withdrawal only in part, solely for the purpose of conducting any jury trial. In particular, withdrawing reference only as to any jury trial and preserving reference of all pre-trial matters to the Bankruptcy Court promotes judicial economy and the efficient use of the Debtor's limited resources. In the event of withdrawal of reference in whole, Local Rule 72.1 results in the referral of all non-dispositive procedural and dispositive motions and other pretrial motions to the Magistrate Judge for hearing and decision and the referral of all dispositive motions to the Magistrate Judge for hearing and recommendation. The Magistrate Judge's function in the event of a full withdrawal will differ little from the Bankruptcy Judge's function in the event of a withdrawal for trial only. As a result, there is no gain in judicial economy or efficient use of the Debtor's limited resources by a withdrawal in whole.

On the other hand, withdrawal of the reference in part, leaving all pre-trial matters to the Bankruptcy Court, promotes judicial economy by taking advantage of its greater experience

20

and expertise with the bankruptcy law and considerations relating to this adversary proceeding (e.g., the legal distinction between the Debtor and the Debtor-in-Possession as entities and in function). The Debtor-in-Possession submits that the District Court has referred all bankruptcy cases, core proceedings, and non-core related proceedings to the Bankruptcy Judges by the Administrative Referral Order, for the purpose of achieving this judicial economy and efficient use of the Debtor-in-Possession's limited resources.

CONCLUSION

For the foregoing reasons, the Debtor-in-Possession requests that the District Court withdraw reference only in part, pursuant to 28 USC § 157(d), ordering withdrawal solely for the purpose of conducting the jury trial itself and affirming referral of this adversary proceeding for all discovery, motion, and other pre-trial proceedings.

This, the 14th day of January, 2010.

s/Ronald K. Payne
Ronald K. Payne
N.C. Bar № 7961
Philip S. Anderson
N.C. Bar № 21323
Attorneys for Plaintiff
Long, Parker, Warren, Anderson & Payne, P.A.
14 South Pack Square, Suite 600
Asheville, North Carolina  28801
Telephone:  828/258-2296
Fax:  828/253-1073
email:  philip@longparker.com

21

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I electronically filed the foregoing Memorandum with the Clerk of Court using the CM/ECF system which will send notification of such filing to Defendant's counsel of record in this action.

This, the 14th day of January, 2010.

/s/ Philip S. Anderson

22