Westlaw

Page 1

Not Reported in B.R., 2000 WL 33682815 (Bkrtcy.M.D.N.C.)
**(Cite as: 2000 WL 33682815 (Bkrtcy.M.D.N.C.))**

Only the Westlaw citation is currently available.

United States Bankruptcy Court, M.D. North Carolina.
In re: BONDS DISTRIBUTING COMPANY, INC., Debtor.
Bruce MAGERS, Trustee in Bankruptcy for Bonds Distributing Company, Inc., Plaintiff,
v.
Donald R. BONDS and Bonds, Inc., Defendants.
Donald R. BONDS, Third-Party Plaintiff,
v.
William L. MILLS, III, Attorney at Law, d/b/a "The Mills Law Firm", Third-Party Defendant.
No. 97-52130C-7W, 98-6044.

Nov. 15, 2000.

MEMORANDUM OPINION

STOCKS, Bankruptcy J.

**\*1** This adversary proceeding came before the court on June 22, 2000, for hearing upon a motion by plaintiff for final determination of motion to strike defendants' demand for jury trial and for hearing upon a motion by defendants for abstention from hearing and ruling on the plaintiff's motion to strike demand for jury trial.[FN1] Thomas W. Waldrep, Jr. and Daniel C. Bruton appeared on behalf of the plaintiff and Richard S. Gordon appeared on behalf of the defendants. Having considered the motions, the responses to the motions and the matters of record in this adversary proceeding, and having heard the arguments of counsel for the parties, the court makes the following findings and conclusions pursuant to Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure.

> FN1. Subsequent to the hearing on June 22, 2000, a mediator was named and a mediation was held. The ruling on the motions was held in abeyance pending the outcome of the mediation. The mediator's report was filed on October 2, 2000, reporting that the mediation was unsuccessful.

JURISDICTION

The court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984.

PROCEDURAL BACKGROUND

This adversary proceeding was instituted on August 14, 1998. The complaint alleges multiple claims against the defendants. On October 12, 1998, the defendants filed an answer and made a demand for jury trial. The plaintiff filed a motion to strike the defendants' demand for jury trial on November 24, 1998. Following a hearing on the motion to strike, an order was entered on February 16, 1999, denying the motion as premature. In the order denying the motion, this court concluded that once discovery had been completed and dispositive motions had been filed and decided, the issue of jury trial would be ripe for determination. Thereafter, the parties engaged in discovery. At the conclusion of discovery, all parties moved for summary judgment. This court ruled on the motions for summary judgment on April 3, 2000, when an order was entered denying the defendants' motion for summary judgment, denying the third-party defendant's motion for summary judgment and denying plaintiff's motion for summary judgment except as to the second claim for relief. As to plaintiff's second claim for relief, the court entered summary judgment adjudging that defendant Bonds did not perfect a security interest in the assets of the Debtor, Bonds Distributing Company, Inc., as a result of which it was adjudged that the plaintiff was entitled to avoid the transfer

Not Reported in B.R., 2000 WL 33682815 (Bkrtcy.M.D.N.C.)
**(Cite as: 2000 WL 33682815 (Bkrtcy.M.D.N.C.))**

of the Debtor's assets and recover from defendant Bonds the value of such assets as of August 21, 1997. This court found, however, that an issue of fact existed as to the value of the assets on that date.

On May 1, 2000, plaintiff filed his motion for final determination of motion to strike defendants' demand for jury trial, alleging that the issue of jury trial was ripe for determination, the court having ruled on the motions for summary judgment.

The defendants responded with the filing of the other motion which is now before the court requesting that this court abstain from hearing and ruling upon the plaintiff's motion to strike the demand for jury trial. In support of their request for abstention by this court, the defendants attached to their motion a copy of a motion which was filed by the defendants in the District Court on April 21, 2000, in which the defendants requested "a withdrawal of the reference of this case to the bankruptcy court, to the end that a jury trial might be accorded them." The defendants state in the motion filed in this court that the purpose of their motion in the District Court was to have a determination made as to their right to a jury trial and that this purpose "will be achieved by the District Court's either withdrawing or declining to withdraw this case from the jurisdiction of the bankruptcy court as to some or all of the issues raised therein."

**\*2** The question raised by defendants as to which court should make the initial determination regarding the issues, if any, which must be determined by a jury was resolved on July 7, 2000, when an order was entered in the District Court denying the defendants' motion for withdrawal of the reference without prejudice "pending determination by the Bankruptcy Court of the issues, if any, which must be resolved by a jury." Accordingly, the court will deny defendants' motion for abstention and proceed with a determination regarding the issues, if any, as to which the defendants are entitled to a jury trial.

DISCUSSION

I. Criteria for determining whether right to jury trial exists.

Defendants base their claim to a right to a jury trial on the Seventh Amendment to the United States Constitution which states that "in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved ." As recognized by the Supreme Court in *Granfinanciera v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), the phrase "suits at common law" has been consistently interpreted "to refer to suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized and equitable remedies were administered." *Id*. at 41. Focusing on the legal/equitable distinction, the Court in *Granfinanciera* provided criteria for determining whether a party has a right to a jury trial in a bankruptcy proceeding.

The Court first observed that a party has a right to a jury trial where that party would have had a right to a jury trial in England in 1791, the year the Constitution was ratified. As discussed above, courts have consistently interpreted the phrase "suits at common law" to refer to legal actions as opposed to equitable actions and a cause of action must be considered legal to satisfy this step of the test. Actions that are legal in nature include causes of action that would have been brought in courts of law in 18th Century England. Also included are modern causes of action that did not exist in 18th century England but that are analogous to common law causes of action that were tried in English courts of law. *Id*. 42. Additionally, the Court stated that an analysis also should be made of whether the cause of action seeks a remedy that is legal in nature, such as money or money damages, as opposed to a remedy such as an accounting or an injunction, that is considered to be equitable in nature. Under the reasoning of the Court, this step is more important than the step involving the historical analysis. *Id* . at 42.

Not Reported in B.R., 2000 WL 33682815 (Bkrtcy.M.D.N.C.)
**(Cite as: 2000 WL 33682815 (Bkrtcy.M.D.N.C.))**

II. Application of criteria to claims involved in the present case.[FN2]

> FN2. At the outset it should be noted that neither of the defendants has filed a proof of claim in the underlying bankruptcy case. Hence, there is no contention that the defendants have waived the right to demand a jury trial.

A. First Claim-Preferential Payments.

In the First Claim, the plaintiff seeks the recovery of $122,168.24 in payments made by the Debtor to Mr. Bonds during the year immediately preceding the bankruptcy filing, which the plaintiff maintains are preferential under § 547 of the Bankruptcy Code. It is well settled that a claim to recover preferential transfers pursuant to § 547 of the Bankruptcy Code is legal in nature and that a defendant in such an action is entitled to a jury trial. *See Schoenthal v. Irving Trust Co.,* 287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185 (1932); *Langenkamp v. Culp,* 498 U.S. 42, 48-59, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990) ("If a party does not submit a claim against the bankruptcy estate ... the trustee can recover allegedly preferential transfers only by filing what amounts to a legal action to recover a monetary transfer. In those circumstances the preference defendant is entitled to a jury trial."). The solvency of the Debtor at the time of the alleged preferential payments is disputed based on conflicting evidence regarding the value of the Debtor's assets and the amount of its liabilities. It follows that the defendants in the present case are entitled to a jury trial with respect to the First Claim.

B. Second and Third Claims-Failure to Perfect Security Interest.

**\*3** In these claims, the plaintiff alleges that no security interest was perfected by Mr. Bonds because of the inadequacy of the description of the collateral in the UCC financing statements and because the financing statement filed with the Secretary of State contains no address for Mr. Bonds. This involves a legal claim that Mr. Bonds failed to comply with pertinent statutory provisions related to perfection of security interests in North Carolina. To the extent that factual issues existed regarding the claim that no security interest was perfected, there would be a right to jury trial. *See In re CIS Corporation,* 172 B.R. 748, 763 (S.D.N.Y.1994). In the present case, however, there are no issues of material facts regarding the avoidability of the security interest claimed by Mr. Bonds. The court has found from the undisputed facts that Mr. Bonds did not comply with the North Carolina filing requirements and that as a matter of law, he never perfected a security interest in the Debtor's assets. Summary judgment, therefore, has been granted in favor of the plaintiff adjudging that the plaintiff is entitled to avoid the security interest granted to Mr. Bonds. However, this summary judgment resolves only one of the issues involved in these claims. As noted in the memorandum opinion regarding summary judgment, the extent of the recovery to which the plaintiff is entitled as a result of the avoidance of the security interest is an issue which remains unresolved. Summary judgment was not granted as to the issue of damages. As also noted in the memorandum opinion, there is conflicting evidence regarding the amount which the plaintiff is entitled to recover, which raises an issue of fact for determination by the trier of the facts. Because this factual issue arises in the context of a claim in which the defendants are entitled to a jury trial, the issue is one to be determined by a jury. *See In re C.I.S. Corporation,* 172 B.R. at 763.

C. Fourth Claim-Fraudulent Conveyance.

In the Fourth Claim the plaintiff alleges that the issuance of the Redemption Note and the Security Agreement by the Debtor to Mr. Bonds constituted a fraudulent conveyance under G.S. § 39-15, *et seq.,* which is avoidable under § 544(b) of the Bankruptcy Code. In support of this claim, the plaintiff alleges that issuance of the promissory note and security agreement was not supported by

Not Reported in B.R., 2000 WL 33682815 (Bkrtcy.M.D.N.C.)
**(Cite as: 2000 WL 33682815 (Bkrtcy.M.D.N.C.))**

sufficient consideration because the Debtor received no value for the issuance of these instruments. According to the plaintiff, the transfer represented by the issuance of the promissory note and security agreement occurred while the Debtor was insolvent or rendered the Debtor insolvent. Summary judgment was denied as to this claim because the record includes conflicting affidavits and other materials which create disputed issues of fact as to the value of the Debtor's assets and the amount of its liabilities at the time the promissory note and security agreement were issued and the financial condition of the Debtor immediately before and immediately after that transaction. These issues of fact were deemed material because they have a significant bearing on the extent to which there was consideration for the promissory note and security agreement which Mr. Bonds received from the Debtor and whether the Debtor was insolvent at the time of the transaction or was rendered insolvent by the transaction. The plaintiff argues that a jury trial is not required as to his fraudulent conveyance claim because plaintiff seeks an equitable remedy involving the setting aside of the promissory note and security agreement which were issued by the Debtor to Mr. Bonds.

**\*4** Although a fraudulent conveyance action is an action at law, the decision in *Granfinanciera* requires that the remedy sought in the fraudulent conveyance action be considered in determining whether the suit should be regarded as one at law or one in equity. The effect of the remedy being sought in a fraudulent conveyance action upon whether the action will be deemed one at law or one in equity was summarized in § 38.31[4][a] of *Moore's Federal Practice* as follows:

If the subject matter is money, then the action would be for money had and received, and the relief sought would be for payment of money by way of damages. Traditionally such an action would be tried at law and the parties would therefore be entitled to a jury trial. If the subject matter were a chattel in the grantee's possession, an action in trover or replevin would be the remedy, also traditionally tried at law and requiring a jury on demand. If, on the other hand, the subject matter of the fraudulent transfer is land or an *intangible,* requiring the equitable remedy of setting aside the conveyance, or if equitable aid for an accounting or the like is required, then the equitable process would traditionally have been invoked, and a jury trial will not be available. (Emphasis added).

*Black's Law Dictionary* 809 (6th ed.1990) defines "intangible" as "such property as has no intrinsic and marketable value, but is merely the representative or evidence of value, such as certificates of stock, bonds, promissory notes ...." Hence, to the extent that the plaintiff seeks to set aside the note and security agreement, an equitable remedy is sought for which there would be no right to jury trial. See *McFarland v. Winnebago South, Inc.,* 863 F.Supp. 1025, 1034 (W.D.Mo.1994) (defendant not entitled to a jury trial where plaintiff sought cancellation of a note and deed of trust). However, a close reading of plaintiff's complaint reflects that such relief is not the only relief sought by the plaintiff in the fraudulent conveyance claim. Paragraph 115 of the complaint alleges that "[t]o the extent that the transfer of the Stock Redemption Note and the granting of the security interest in the Debtor's assets to Bonds is avoided, the property and/or funds received by Bonds as a result of the transfer[s] is recoverable by the Trustee" and the prayer for relief asks for such recovery. The plaintiff thus seeks to recover from Mr. Bonds the payments which were made to him by the Debtor pursuant to the promissory note. This is a substantial claim involving twelve payments totaling $309,964.67. In seeking the recovery of such monetary damages, the plaintiff included in this claim a remedy which was traditionally obtained at law and for which there is a right to jury trial. Plaintiff thus has combined or intertwined a jury remedy and a non-jury remedy in a single claim or action.

It is well established that a party does not lose its rights to a jury trial with respect to a legal claim be-

Not Reported in B.R., 2000 WL 33682815 (Bkrtcy.M.D.N.C.)
**(Cite as: 2000 WL 33682815 (Bkrtcy.M.D.N.C.))**

cause the legal claim is combined with an equitable claim in the same action. *See Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 472-73, 82 S.Ct. 894, 897, 8 L.Ed.2d 44 (1962). The rule which has developed is that where legal and equitable claims are combined in an action, the action must be structured and tried in a manner that preserves the right to jury trial with respect to the legal claim. Where the legal claim and the equitable claim have common issues of fact, the right to a jury trial cannot be negated through prior determination of the equitable claims by the court. This means that if the legal claim and the equitable claim do have common issues of fact, the legal claim must be decided first by the jury. *See Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 510-11, 79 S.Ct. 948, 957, 3 L.Ed.2d 988 (1959) ("only under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims."); *Richardson v. Leeds Police Dept.,* 71 F.3d 801, 806 (11th Cir.1995) ("When legal and equitable causes are joined in one action, the legal issues must be decided first.... To the extent that the elements of the two types of claims mirror one another, the jury's findings on the legal questions are binding in resolving the equitable issues."); *Perez-Serrano v. DeLeon-Velez,* 868 F.2d 30, 33 n. 1 (1st Cir.1989) ("Under the doctrine of 'law of the case,' a jury cannot re-examine findings made by a court. Thus, because the seventh amendment dictates that the jury determine liability in this case, it was error for the court to assess liability, thus foreclosing the possibility of a subsequent jury determination on the issue."); *Skinner v. Total Petroleum, Inc.,* 859 F.2d 1439, 1443 (10th Cir.1988) ("The strictures of the Seventh Amendment are particularly applicable in a case where, due to the presence of both equitable and legal issues, trial is both to the jury and to the court. In such a situation, when a case involves both a jury trial and a bench trial, any essential factual issues which are central to both must be first tried to the jury, so that the litigants' Seventh Amendment jury trial rights are not foreclosed on common factual issues.").

**\*5** In the present case, the legal claim for damages and the equitable claim to set aside instruments arise out of the same set of facts and hence have common issues of fact. For example, the value of the debtor's assets at the time of the transfer is central to both the equitable remedy and the legal remedy sought by plaintiff. Under the foregoing authorities, the defendant's right to jury trial must be recognized and such right preserved by having the jury trial precede any determination regarding the granting of equitable relief by the court with respect to the fraudulent conveyance claim. It follows that the defendants are entitled to a jury trial with respect to the Fourth Claim.

D. Fifth Claim-Claim Based Upon G.S. § 55-6-40(c).

Under G.S. § 55-6-40(c) no distribution may be made to the shareholder of a corporation if, after giving the transfer effect, the corporation would not be able to pay its debts as they become due in the usual course of business or if the corporation's total assets would be less than the sum of its total liabilities. The plaintiff alleges in the Fifth Claim that the transaction in which Mr. Bonds received the promissory note and security agreement violated G.S. § 55-6-40(c) and that the promissory note therefore is invalid and unenforceable and that all payments made pursuant to the promissory note "are invalid and recoverable" by the plaintiff.

The plaintiff argues that defendants have no right to jury trial with respect to the Fifth Claim because the relief sought is the equitable remedy of rescission. The argument that rescission or cancellation of a contract or other instrument is traditionally equitable and, hence, triable by the court without a jury, is correct. However, as in the Fourth Claim, plaintiff also seeks in the Fifth Claim to recover from Mr. Bonds the amount of the payments which were made by the Debtor pursuant to the promissory note based upon the same set of facts. Hence,

Not Reported in B.R., 2000 WL 33682815 (Bkrtcy.M.D.N.C.)
**(Cite as: 2000 WL 33682815 (Bkrtcy.M.D.N.C.))**

just as with the Fourth Claim, the Fifth Claim is one in which traditionally equitable relief as well as traditionally legal relief are both sought by the plaintiff. Accordingly, to the extent the trustee seeks in the Fifth Claim to recover from Mr. Bonds the payments which were made to him by the Debtor pursuant to the promissory note, defendants are entitled to have liability determined by a jury before any determination is made by the court regarding the granting of equitable relief based upon the same facts.

E. Sixth Claim-Statutory Liability of Directors.

The Sixth Claim is based upon G.S. § 55-8-33(a) which provides that a director who votes for or assents to a distribution made in violation of G.S. § 55-6-40 is personally liable to the corporation [FN3] for the amount of the distribution that exceeds what could have been distributed without violating G.S. § 55-6-40 if it is established that he did not perform his duties in compliance with G.S. § 55-8-30. G.S. § 55-8-30, in turn, specifies the general standards required of corporate directors and requires that a director discharge his duties (1) in good faith; (2) with the care an ordinarily prudent person in a like position would exercise under similar circumstances; and (3) in a manner the director reasonably believes to be in the best interest of the corporation.

> FN3. The primary right of enforcement of G.S. § 55-8-33(a) lies with the corporation and the corporation is the real party in interest and must be joined as a party to an action to collect amounts due under G.S. § 55-8-33(a). See *Underwood v. Stafford,* 270 N.C. 700, 155 S.E.2d 211 (1967). However, if the corporation is in bankruptcy, the bankruptcy trustee may bring such an action on behalf of the bankruptcy estate of the corporation. See 5 *Collier on Bankruptcy* ¶ 541.08[6] (15th ed. rev.2000).

\*6 The Sixth Claim thus is one created by statute.

In determining whether the statutory claim or remedy is more similar to ones that were tried in courts of law than in courts of equity, and in order to analyze whether the remedy is legal or equitable in nature, an analysis of the purpose of the statutory claim is instructive. For example, if the purpose of the statutory remedy is to punish or to impose a civil penalty, a legal claim which, traditionally, was presented in a court of law is involved and there is a right to a jury trial. See *Fleitman v. Welsback Street Lighting Co.,* 240 U.S. 27, 28-29, 36 S.Ct. 233, 234, 60 L.Ed. 505 (1916) (involuntary treble damages); *Tull v. United States,* 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987) (involving civil penalty under Clean Water Act). Conversely, if the statutory remedy is equitable in nature, such as injunctive relief or restitution, the statutory claim will be regarded as one traditionally heard in courts of equity and equitable in nature and, hence, one in which there is no right to jury trial. See *Teamsters v. Terry,* 494 U.S. 558, 570, 110 S.Ct. 1339, 1348, 108 L.Ed.2d 519 (1990) ("We have characterized damages as equitable where they are restitutionary, such as 'action[s] for disgorgement of improper profits' "); *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 415-419, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (back pay awarded against employer characterized as restitution).

In the present case, plaintiff argues that the remedy provided under G.S. § 55-8-33 involves restitution, an equitable remedy, and that, therefore, there is no right to jury trial with respect to the Sixth Claim. For the reasons hereinafter discussed, this argument is not accepted.

In *Broadnax Mills v. Blue Cross & Blue Shield of Va.,* 876 F.Supp. 809, 817 (E.D.Va.1995), the court dealt with the distinction between a legal claim for monetary damages and the equitable remedy of restitution in the context of an ERISA suit against an ERISA plan administrator. The plaintiff sought several types of monetary relief. Plaintiff's claim for damages sustained by the plan as a result of the defendant's alleged wrongdoing was characterized

Not Reported in B.R., 2000 WL 33682815 (Bkrtcy.M.D.N.C.)
**(Cite as: 2000 WL 33682815 (Bkrtcy.M.D.N.C.))**

as a "damages-type remedy" and was treated as a legal claim. On the other hand, plaintiff's claim for the return (i.e., disgorgement) of discounts improperly withheld by the defendant in its capacity as an ERISA plan fiduciary was delineated as a claim for restitution and was treated as an equitable relief. In making this distinction, the court characterized restitution as "a remedy for redressing unjust enrichment". The Sixth Claim in the present case involves a "damages-type remedy" and hence is legal in nature.

The effect of G.S. § 55-8-33(a), where payments have been made to shareholders in excess of what is permissible, is to create a claim in favor of the corporation for the recovery of the damage to the corporation, i.e., the excess amounts paid with the funds of the corporation. The claim is not one involving disgorgement or the return of money or property because G.S. § 55-8-33(a) creates potential liability for the directors who approved the payment and not the shareholders who received it. In order for the corporation or one acting on behalf of the corporation to recover from the directors, however, it must be proven that the directors failed to discharge their duties in compliance with G.S. § 55-8-30, which would involve proving that the directors failed to act in good faith, were negligent (i.e., failed to exercise reasonable care) or did not act in a manner in which the director believed was in the best interest of the corporation. If either of the of these grounds is established, the director may be held liable, not for amounts received as a director, but for amounts lost by the corporation as a result of excessive payments made to others. A remedy affording such relief is more in the nature of a legal remedy for the recovery of damages than the equitable remedy of restitution. For this reason, the court concludes that defendant Bonds is entitled to a jury trial with respect to the Sixth Claim in which he has been sued in his capacity as a director of the Debtor.

F. Seventh Claim-Commercially Reasonable Foreclosure Sale.

**\*7** In the Seventh Claim, plaintiff alleges that the foreclosure sale which was conducted on August 21, 1997, on behalf of Mr. Bonds was not commercially reasonable as required by G.S. § 25-9-504(3). As a result, the plaintiff alleges that pursuant to G.S. § 25-9-507(1), Mr. Bonds is liable for any loss caused by such failure. Pursuant to this claim, plaintiff seeks to recover from Mr. Bonds the sum of $1,484,391.11, representing the fair market value of the Debtor's assets at the time of the foreclosure sale. In the memorandum opinion regarding summary judgment, this court concluded that the evidence was sufficient to raise an issue for the trier of fact as to whether Mr. Bonds substantially complied with the requirements of G.S. § 25-9-601 in noticing and conducting the purported sale which was held on August 21, 1997, and did not show that Mr. Bonds failed to substantially comply or that the sale was not commercially reasonable as a matter of law. The motions for summary judgment, therefore, were denied. The plaintiff apparently does not contest that the defendants are entitled to a jury trial with respect to the Seventh Claim.[FN4]

> FN4. See page 22 of plaintiff's Brief in Support of Motion to Strike Defendant's Demand for Jury Trial which was filed on November 24, 1998.

G. Eighth Claim-Piercing the Corporate Veil.

In the Eighth Claim the plaintiff alleges that Bonds, Inc. is liable to the creditors of the Debtor because Mr. Bonds used Bonds, Inc. as an instrumentality to strip and take away the assets of the Debtor. The plaintiff alleges that Bonds, Inc. was a mere instrumentality and the alter ego of Mr. Bonds and that the corporate veil of Bonds, Inc. therefore should be pierced and Mr. Bonds held personally liable for the liability of Bonds, Inc. to the creditors of the Debtor. The elements of this claim are: (a) complete domination, not only of finances, but also of policy and business practice in respect to the transaction attacked, so that the corporate entity as to that transaction had no separate mind; (b) such con-

Not Reported in B.R., 2000 WL 33682815 (Bkrtcy.M.D.N.C.)
**(Cite as: 2000 WL 33682815 (Bkrtcy.M.D.N.C.))**

trol was used to commit wrong or fraud, to perpetuate the violation of some legal duty, or a dishonest and unjust act in contravention of another party's legal rights; and (c) the control and breach of duty proximately caused the injury or unjust loss for which compensation is sought. *See Glenn v. Wagner,* 313 N.C. 450, 455, 329 S.E.2d 326, 331 (1985). These elements are denied by the defendants and it appears that there will be issues of fact to be resolved as to the Eighth Claim. The plaintiff contends that there is no right to jury trial as to any such issues because piercing the corporate veil is an action that "sounds in equity."

The cases are divided on the issue of whether there is a right to jury trial with respect to claims seeking to pierce the corporate veil based upon theories such as mere instrumentality or alter ego. With respect to the question of whether such claims were equitable claims or legal claims in 18th Century England, there is a "lack of clear historical development" with some courts finding that the claim was equitable, while others reach a contrary conclusion. *See In re Lee Way Holding Company,* 118 B.R. 544, 546-547 (Bankr.S.D.Ohio 1990). One of the more extensive discussions of the historical development of the action for piercing the corporate veil is found in *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc .,* 933 F.2d 131 (2d Cir.1991). There the court discussed the conflict in the cases regarding the historical development of the claim for piercing the corporate veil and reached the conclusion that history supported "the proposition that the nature of the ancient action disregarding the corporate form had equitable and legal components." *Id.* at 136. The court then proceeded to the second prong of the test required in the *Granfinanciera* jury trial analysis and analyzed the nature of the relief being sought by the plaintiff in the *Resnick* case. Such relief involved an effort by the plaintiff to impose liability upon the defendants for a monetary judgment obtained against a related corporation. The court concluded that such relief was legal in nature and that, because the action of piercing the corporate veil had its roots in both law and equity, it was "entirely proper for the district court to submit the corporate disregard issue to the jury." *Id.* at 136. Without much discussion, a similar conclusion has been reached by the other courts of appeal who have considered the issue. *See American Protein Corp v. AB Volvo,* 844 F.2d 56, 59 (2d Cir.1988) ("the issue of corporate disregard is generally submitted to the jury"); *FMC Finance Corp. v. Murfree,* 632 F.2d 413, 421, n. 5 (5th Cir.1980) ("This court holds that the issue of corporate entity disregard is one for the jury."); *Delchamps, Inc. v. Borkin,* 429 F.2d 417 (5th Cir.1970). *In Accord, Cantiere DiPortovenere Piesse S.p.A. v. Kerwin,* 739 F.Supp. 231, 236 (E.D.Pa.1990). *Contra, In re Towe,* 151 B.R. 262, 264 (Bankr.D. Montana 1993); *In re Lee Way Holding Co.,* 118 B.R. 544, 547 (Bankr.S.D.Ohio 1990); *United States v. Golden Acres, Inc.,* 684 F.Supp. 96, 103 (D. Delaware 1988).

**\*8** The weight of authority appears to recognize a right to jury trial with respect to claims seeking to pierce the corporate veil based upon the theories of alter ego or mere instrumentality. Although not entirely clear from the opinions, the courts in these decisions apparently have concluded that where such claims seek to impose liability upon the defendant for the debts or obligations of another, the remedy sought is monetary damages and, hence, is legal in nature. Under the decision is *Granfinanciera,* this aspect of the jury trial analysis is more important than the step involving the historical analysis. Moreover, it is not clear that the historic analysis supports jury trial with respect to such claims, since it appears that historically such claims had both equitable and legal components, with the legal component being the one in which liability was imposed against shareholders. Based upon these considerations and the fact that in the present case, the claim, in effect, seeks monetary damages from Mr. Bond by imposing liability upon him for the liabilities of Bonds, Inc., the court concludes that the defendants have a right to jury trial with respect to the Eighth Claim.

Not Reported in B.R., 2000 WL 33682815 (Bkrtcy.M.D.N.C.)
**(Cite as: 2000 WL 33682815 (Bkrtcy.M.D.N.C.))**

H. Ninth Claim-Breach of Fiduciary Duty.

In this claim the plaintiff alleges that Mr. Bonds breached duties which he had as a director of the Debtor. The claim apparently is based upon G.S. § 55-8-30 which deals with the duties of a corporate director in North Carolina. Under this statute, a director is required to discharge the duties of a director in good faith, with the care an ordinarily prudent person in a like position would exercise under circumstances and in a manner the director reasonably believes to be in the best interest of the corporation. Although the word "fiduciary" is not used in this provision, the North Carolina commentary to § 55-8-30 points out that "there is no intent to change North Carolina law in this area. The decision not to bring forward the language stating that a director shall 'be deemed to stand in a fiduciary relation to the corporation' in former G.S. § 55-35 is not intended to modify in any way the duty of directors recognized under the former law." The earlier cases which discuss and delineate the duties of directors thus continue to be effective. Under these cases, directors act in a fiduciary capacity in the sense of owing the corporation the duties of good faith, loyalty and due care. *See Hill v. Erwin Mills, Inc.,* 239 N.C. 437, 80 S.E.2d 358 (1954); *Loy v. Lorm Corp.,* 52 N.C.App. 428, 278 S.E.2d 897 (1981).

In very general terms, the complaint alleges in the Ninth Claim that Mr. Bonds breached all of his duties as a director of the Debtor. More specificity is provided in the Trustee's Reply Brief Responding to Defendants' Motion for Summary Judgment.[FN5] The plaintiff argues that Mr. Bonds breached his duties to the Debtor of fidelity and due care when he caused the Debtor to enter into the transaction on November 7, 1995, which, according to the plaintiff, constituted "financial suicide" for the Debtor.[FN6] Plaintiff also alleges that Mr. Bonds breached his duty of due care because he deliberately disregarded the affairs of the Debtor.[FN7] When Mr. Bonds foreclosed on the assets of the Debtor in August of 1997, the plaintiff argues that he breached a duty owed under the "trust fund doctrine" which was owed to the creditors of the Debtor.[FN8] The remedy sought in the Ninth Claim is monetary damages. The damages are quantified as being "the value of the debtor's assets at the time of the Foreclosure Sale."[FN9] An alternative statement of damages is that Mr. Bonds is liable for $1,511,032.10 based upon "the difference between the value of the Debtor at the time of the November of 1995 Transaction ($1,612,191.10) and the value of the Debtor ($101,159.00) on the Petition Date."[FN10] Additional damages of $309,964.67 are alleged in the Ninth Claim, representing the quarterly payments which were received by Mr. Bonds under the promissory note which the plaintiff characterizes as "the fruit of Bond's breach of fiduciary duty to the debtor ...."[FN11]

> FN5. See pp. 40-46 of the Trustee's Reply Brief, filed on September 30, 1999.
>
> FN6. See p. 43 of Trustee's Reply Brief.
>
> FN7. See p. 42 of Trustee's Reply Brief.
>
> FN8. See p. 44 of Trustee's Reply Brief.
>
> FN9. See p. 45 of Trustee's Reply Brief.
>
> FN10. See p. 46 of Trustee's Reply Brief.
>
> FN11. See p. 46 of Trustee's Reply Brief.

**\*9** In *Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970), the Supreme Court dealt with the right to a jury trial in the context of a stockholders' derivative lawsuit against the directors of a corporation. The plaintiffs alleged claims against the directors based upon breach of fiduciary duty, breach of contract and gross negligence. In deciding whether the plaintiffs were entitled to a jury trial, the Court first ruled that whether the plaintiffs were entitled to a jury trial depended upon whether the corporation, had it asserted the claims itself, would have been entitled to a jury trial. The court then examined the claims involved in the suit, concluded that the corporation would have been entitled to a jury trial and held that the plaintiffs were

Not Reported in B.R., 2000 WL 33682815 (Bkrtcy.M.D.N.C.)
**(Cite as: 2000 WL 33682815 (Bkrtcy.M.D.N.C.))**

entitled to a jury trial, stating:

In the instant case we have no doubt that the corporation's claim is, at least in part, a legal one. The relief sought is money damages. There are allegations in the complaint of a breach of fiduciary duty, but there are also allegations of ordinary breach of contract and gross negligence. The corporation, had it sued on its own behalf, would have been entitled to a jury's determination, at a minimum, of its damages against its broker under the brokerage contract *and of its rights against its own directors because of their negligence*. Under these circumstances it is unnecessary to decide whether the corporation's other claims are also properly triable to a jury.

396 U.S. at 542, 90 S.Ct. at 740 (emphasis added).

Under North Carolina law, the duties and liabilities of directors under G.S. § 55-8-30, the statute relied upon in this claim, "run directly to the corporation and indirectly to its shareholders ... and must therefore be enforced in a direct action by the corporation itself or in a derivative action brought on its behalf by one or more shareholders." *Robinson on North Carolina Law,* § 14-8 (5th ed.1995). Such claims in favor of a corporate debtor become property of the estate pursuant to § 541(a) of the Bankruptcy Code. *See* 5 *Collier on Bankruptcy* ¶ 541.08[6] (15th ed. rev.2000) ("The estate created pursuant to section 541 succeeds to any right of action the debtor corporation may have to recover damages for misconduct, mismanagement, or neglect of duty by a corporate officer or director."). The claim alleged by the plaintiff in the Ninth Claim is such a claim, i.e., the plaintiff is alleging a claim which the Debtor had against a director prior to bankruptcy based upon alleged violations of the duties imposed by G.S. § 55-8-30. Under the decision in *Ross v. Barnhard,* if the defendants would have had a right to jury trial had the claim been brought by the debtor, then they likewise have a right to jury trial in the plaintiff's action. One of the issues of liability raised in the Ninth Claim is whether Mr. Bonds breached his duty of due care, i.e., whether he discharged his duties with the care an ordinarily prudent person in a like position would exercise under similar circumstances. Such issue is tantamount to a negligence issue and, therefore, is an issue with respect to which the defendants are entitled to a jury trial. Since the defendants are entitled to a jury trial on the negligence issue, "it is unnecessary to decide whether the ... other claims are also triable to a jury." *See Ross v. Bernhard,* 396 U.S. at 543, 90 S.Ct. at 740. This is true even though the claim also seeks relief under the "trust fund doctrine" because the facts involved with this issue are intertwined with the facts involving the negligence claim. An indicated earlier, where a claim involves both legal and equitable relief and there are common issues of fact, the jury trial of the legal claim must precede the non-jury determination of the equitable claim.

I. Tenth Claim-Mere Continuation.

**\*10** In the tenth claim, the Trustee argues that Bonds, Inc. is liable for the debts of the Debtor because Bonds, Inc. is a mere continuation of the Debtor. The general rule under North Carolina law is that the purchaser of all or substantially all the assets of a corporation is not liable for the debts of the old corporation. *See Budd Tire Corp. v. Pierce Tire Co.,* 90 N.C.App. 684, 370 S.E.2d 267 (1988). However, North Carolina recognizes four exceptions to this general rule: (1) Where there is an express or implied agreement by the purchasing corporation to assume the debt or liability; (2) where the transfer amounts to a *de facto* merger of the two corporations; (3) where the transfer of assets was done for the purpose of defrauding creditors; and (4) where the purchasing corporation is a "mere continuation" of the selling corporation. *See GP Publications, Inc. v. Quebecor Printing-St. Paul, Inc.,* 125 N.C.App. 424, 432-33, 481 S.E. 674 (1997), *rev. denied,* 346 N.C. 546, 488 S.E.2d 800 (1997). In the present case, the Trustee relies upon the "mere continuation" exception in alleging that Bonds, Inc. should be held liable for the debts of the Debtor. Under North Carolina law, a corporate successor is the continuation of its predecessor if

Not Reported in B.R., 2000 WL 33682815 (Bkrtcy.M.D.N.C.)
**(Cite as: 2000 WL 33682815 (Bkrtcy.M.D.N.C.))**

only one corporation remains after the transfer of assets and there is identity of stockholders and directors between the two corporations. Two additional factors which are considered are whether there was inadequate consideration for the purchase and whether any of the elements of a good faith purchaser for value are lacking. See GP Publications, 125 N.C.App. at 434, 481 S.E.2d at 680.

There is scant authority dealing directly with the issue of whether a right to jury trial exists with respect to claims based upon "mere continuation" or "successor liability." There is support for the proposition that the doctrine is equitable in nature or derived from equitable principles. See Ed Peters Jewelry Co. v. C & J Jewelry Co., 124 F.3d 252, 267 (1st Cir.1997) ("successor liability is an equitable doctrine, both in origin and nature"); Chicago Truck Drivers, Helpers and Warehouse Workers Union Pension Fund v. Tasemkin, Inc., 59 F.3d 48, 49 (7th Cir.1995) ("Successor liability is an equitable doctrine, not an inflexible command ...."); Ninth Avenue Remedial Group v. Allis-Chalmers Corp., 195 B.R. 716, 727 (N.D.Ind.1996) ("successor liability is derived from equitable principles"). However, these cases provide little guidance in the present case because they do not discuss whether or under what circumstances there is a right to jury trial in a case involving such a claim.

As is made clear in *Granfinanciera,* the right to jury trial analysis does not end with the determination that a claim is equitable in nature. To complete the analysis, *Granfinanciera* requires a second and more important step in which the remedy sought must be analyzed to determine whether it is legal or equitable in nature. The opinion strongly suggests that if the remedy is legal, then jury trial should be afforded unless the case involves a "public right" or a type of dispute which permissibly may be assigned by Congress to an administrative agency or specialized court of equity. 492 U.S. at 42, 109 S.Ct. at 2790. In the Tenth Claim in the present case, the remedy sought is a judgment against Bonds, Inc. for monetary damages. Specifically, the plaintiff contends that Bonds, Inc. should be held liable for the debts of the Debtor as such debts existed on the date of the foreclosure sale in August of 1997. Thus, if the plaintiff prevails on this claim, the relief sought is for a determination to be made as to the amount of the Debtor's debts and that a judgment be entered adjudging that the plaintiff have and recover that sum of money from Bonds, Inc. This court concludes that such a remedy is legal in nature involving the type of relief in which a defendant traditionally has been entitled to a jury trial. Considering that this factor is the more important one, the court concludes that the defendants are entitled to a jury trial with respect to issues of fact arising in the Tenth Claim. Such a conclusion also is consistent with the Supreme Court's admonition in Chauffeurs, Teamsters & Helpers Local No. 391 v. Terry, 494 U.S. 558, 565, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990), that "any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." (quoting from Dimick v. Schiedt, 293 U.S. 474, 486, 55 S.Ct. 296, 79 L.Ed. 603 (1935)).

**\*11** Although the court in Ed Peters Jewelry Co. v. C & J Jewelry Co ., 215 F.3d 182 (1st 2000), found that the defendants in that case were not entitled to a jury trial with respect to a "mere continuation" claim, the case provides little guidance beyond the particular facts of that case. The apparent basis for the decision was that "this case does not involve the computation of damages, which is often considered a determination to be made by a jury." Id. at 186. Leaving aside whether this is a correct or complete application of the analysis required under *Granfinanciera,* it is clear that the present case *does* involve the computation of damages and is distinguishable from the *Ed Peters Jewelry* case.

J. Eleventh Claim-Treble Damages.

The Eleventh Claim is one created by statute. G.S. § 75-1.1 declares unlawful "unfair or deceptive acts or practices in or affecting commerce ...." G.S. § 75-16 grants a right of action to any person or en-

Not Reported in B.R., 2000 WL 33682815 (Bkrtcy.M.D.N.C.)
**(Cite as: 2000 WL 33682815 (Bkrtcy.M.D.N.C.))**

tity who is injured or damaged by a violation of Chapter 75. Specifically, this statute provides that "such person, firm or corporation so injured shall have a right of action on account of such injury done, and if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the statute."

In determining whether a statutory claim or remedy is more similar to ones that were tried in courts of law than in courts of equity, an analysis of the purpose of the statutory claim is instructive. For example, if the purpose of the statutory remedy is to punish or to impose a civil penalty, a legal claim which, traditionally, was presented in a court of law is involved and there is a right to a jury trial. *See Fleitman v. Welsback Street Lighting Co.,* 240 U.S. 27, 28-29, 36 S.Ct. 233, 234, 60 L.Ed. 505 (1916) (involuntary treble damages). In *Fleitman,* a shareholder brought a bill in equity seeking to recover for the corporation treble damages under the Sherman Act from persons and corporations who were alleged to have engaged in monopolistic conduct. In affirming the Second Circuit's dismissal of the stockholder's suit in equity, the Supreme Court held that "when a penalty of triple damages is sought to be inflicted, the statute should not be read as attempting to authorize liability to be enforced otherwise than through the verdict of a jury in a court of common law." *Id.* at 29, 36 S.Ct. at 234.

In the present case, it seems clear that one of the purposes of G.S. § 75-16 is to impose the penalty of treble damages. Plaintiff therefore does not dispute the right to jury trial as to this claim. Plaintiff concedes "that with regard to a claim for treble damages under N.C. Gen.Stat. § 75-1.1, it is the province of the jury to determine whether the actions complained of actually occurred." [FN12] However, plaintiff argues that a jury simply is not required in this case because "[t]here is no issue of fact as to the actions and activities that took place in this case." This argument cannot be accepted for several reasons. First, it is not at all clear that none of the actions which plaintiff relies upon in this claim are disputed. Secondly, in a claim under G.S. § 75-1.1, there are issues for jury determination other than whether the conduct of the defendant occurred. The other issues for jury determination include proximate cause, i.e., whether the defendant's conduct was the proximate cause of injury to the plaintiff and, if so, the amount of actual damages sustained by the plaintiff as a proximate result of the defendant's conduct.

> FN12. See page 23 of Trustee's Brief in Support of Motion to Strike Defendants' Demand for a Jury Trial.

**\*12** Plaintiff's assertion that after the jury determines whether the conduct in question occurred, the court and not the jury, determines whether the conduct was unfair or deceptive is correct. *See L.C. Williams Oil Company, Inc. v. Exxon Corp.,* 625 F.Supp. 477 (M.D.N.C.1985); *Puretest Ice Cream, Inc. v. Kraft, Inc.,* 614 F.Supp. 994 (D.Mass.1985). The trebling of damages also is a matter handled by the court. However, even if the defendant's conduct is not disputed, these non-jury determinations can occur only after a jury has determined the amount of actual damages sustained by the plaintiff as a proximate result of the defendant's conduct. Relief consisting of actual and punitive damages "is the traditional form of relief offered in the courts of law." *Curtis v. Loether,* 415 U.S. 189, 196, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974). Plaintiff's argument that no jury trial is required regarding the Eleventh Claim which seeks actual and punitive damages is rejected.

K. Twelfth and Thirteenth Claims-Temporary Restraining Order and Preliminary Injunction.

In the Twelfth and Thirteenth claims for relief, the Trustee requested the entry of a temporary restraining order and a preliminary injunction enjoining Mr. Bonds and Bonds, Inc. from disposing of the assets of Bonds, Inc. outside the ordinary course of business. Both of these claims have been resolved

Page 13

Not Reported in B.R., 2000 WL 33682815 (Bkrtcy.M.D.N.C.)
**(Cite as: 2000 WL 33682815 (Bkrtcy.M.D.N.C.))**

by orders entered earlier in this adversary proceeding and no further hearing or trial is required with respect to the Twelfth and Thirteenth Claims.

L. Fourteenth Claim-Turnover and Accounting.

In the Fourteenth Claim the Trustee seeks an order requiring the defendants to turnover the assets of the Debtor to the Trustee pursuant to § 542(a) of the Bankruptcy Code to the extent that the stock redemption note and the granting of a security interest are set aside. Thus, although couched as a § 542 turnover matter, the Fourteenth Claim really involves and depends upon the plaintiff successfully prosecuting the claims to set aside the note and security alleged earlier in the complaint. As previous determined by the court in parts C through J hereof, these claims involve issues which must be tried to a jury. Whether the plaintiff is entitled to a turnover order therefore is a matter which must await the outcome of those jury determinations.

The Trustee also seeks an accounting by the defendants of property of the estate which the defendants acquired. Clearly, merely affixing the label "accounting" to a claim is not determinative of whether there is a right to jury trial. Moreover, the historical antecedents of the remedy are somewhat ambiguous, as indicated in § 38.31[1][a] of *Moore's Federal Practice:*

Suits for accounting originated in the common law courts, but they were narrow in scope in that they only applied against persons having a legal duty to account to plaintiff, such as guardians and receivers. Furthermore, the procedures were cumbersome, and the accounting action was soon replaced in large part at common law by the action of general assumpsit for money had and received, in which all issues were triable to the jury.

*13 In equity, there developed both a concurrent and exclusive jurisdiction over matters of account. Concurrent jurisdiction could be invoked when the claims involved were legal, but the complicated nature of the account rendered the legal remedy inadequate. When the claims involved were equitable, jurisdiction in equity over the accounting were exclusive.

In the present case, the plaintiff's is entitled to an accounting only if plaintiff is successful in one or more of the claims in the complaint which precede the accounting claim. For the reasons already stated, those claims involve issues which the defendants are entitled to have determined by the jury before the any relief may be granted against the defendants based upon those claims. Hence, whether the plaintiff is entitled to an accounting also must await the outcome of those jury determinations.

Additionally, the right to an accounting, as with other equitable remedies, depends upon the plaintiff not having an adequate remedy at law. *See Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 478, 82 S.Ct. 894, 900, 8 L.Ed.2d 44 (1962) ("The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is, as we pointed out in *Beacon Theatres,* the absence of an adequate remedy at law."). In order to obtain an accounting "on a cause of action cognizable at law ... the plaintiff must be able to show that the 'accounts between the parties' are of such a 'complicated nature' that only a court of equity can satisfactorily unravel them." *Id.* In the present case, plaintiff has quantified the amount of the defendants' liability. Plaintiff alleges that the defendants are liable for an amount equal to the fair market value of the Debtor's assets on the date of the sale and is prepared to offer evidence to show that figure. It seems doubtful that any sort of complex accounting is really involved in this case. The plaintiff contends that he is entitled to a judgment for some $1,500,000.00 against both defendants. Such a judgment would be enforceable against all of the assets of the defendants, whether acquired at the foreclosure sale or thereafter. In short, if the plaintiff obtains the monetary judgment he alleges he is entitled to, and the judgment is collectible then no further relief will be needed. If the judg-

**Not Reported in B.R., 2000 WL 33682815 (Bkrtcy.M.D.N.C.)**
**(Cite as: 2000 WL 33682815 (Bkrtcy.M.D.N.C.))**

ment is not collectible because neither defendant has any assets, then an accounting would be pointless.[FN13]

> FN13. This adversary proceeding also includes a third-party claim by Mr. Bonds against the third-party defendant, William L. Mills, III, in which Mr. Bonds asserts that Mr. Mills was negligent and committed malpractice in performing legal services related to the transaction in which Mr. Bonds received the Redemption Note and Security Agreement. The right to jury trial as to the third-party claim apparently is not challenged.

## CONCLUSION

In accordance with the foregoing, an order will be entered adjudging that the defendants are entitled to a jury trial in this adversary proceeding and recommending that the reference of this adversary proceeding be withdrawn by the District Court. Because the various claims alleged by the plaintiff involve intertwined and overlapping facts, this court will recommend that the reference be withdrawn without any further proceedings in this court since it is not feasible for this court to sever out and determine issues before a jury trial has been conducted in the District Court.

## ORDER AND RECOMMENDATION

**\*14** In accordance with the memorandum opinion filed contemporaneously herewith, it is ORDERED, ADJUDGED AND DECREED that defendants are entitled to a jury trial in this adversary proceeding and, in order to accommodate the demand for jury trial, it is hereby recommended that the reference of this adversary proceeding be withdrawn by the District Court without further proceedings being conducted in this court, this court having concluded that it is not feasible for this court to sever out and adjudicate issues prior to a jury trial being conducted in the District Court; and it is FURTHER

ORDERED that a copy of this order and a copy of the memorandum opinion filed contemporaneously with this order be transmitted forthwith by the Clerk of Bankruptcy Court to the District Court.

Bkrtcy.M.D.N.C.,2000.
In re Bonds Distributing Co., Inc.
Not Reported in B.R., 2000 WL 33682815 (Bkrtcy.M.D.N.C.)

END OF DOCUMENT